## H. H. Halliday et al., Appellants, v. Board of County Commissioners of Pulaski County, Appellee.

1. COUNTIES, § 81*—*what is purpose of amendatory act of 1905 providing for levies for payment of judgments.* The amendatory statute of 1905, providing for county levies for payment of judgments (J. & A. ¶ 2781), was enacted for the purpose of enabling boards of county commissioners to take care of such claims, and is mandatory upon said boards to include such claims in determining the amount of taxes to be raised.

2. COUNTIES, § 81*—*necessity of tax levying power making provision for payment of all classes of claims.* A board of county commissioners cannot make provision for payment of one debt or class of claims and refuse to make any provision whatever for payment of others, even those reduced to judgment.

3. COUNTIES, § 81*—*non-necessity of demand upon board of commissioners to make levy to pay judgment.* Demand upon the board of county commissioners to make a levy to pay a judgment is not necessary, as the statute (J. & A. ¶ 2781) requires such levy.

4. COUNTIES, § 81*—*what answer in mandamus proceeding against board of county commissioners to compel making levy of taxes to pay judgments should contain.* The answer and proof in a mandamus proceeding against a board of county commissioners to compel them to make a levy for payment of judgments should show fully and definitely the necessities and items of expenses of the county and the facts as to levy and payment, so the court can see such board was acting in perfect good faith towards creditors.

Appeal from the Circuit Court of Pulaski county; the Hon AL-BERT W. LEWIS, Judge, presiding. Heard in this court at the March term, 1916. Reversed and remanded. Opinion filed November 13, 1916.

GEORGE E. MARTIN, C. L. RICE and FRED HOOD, for appellants.

C. S. MILLER, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

This is a petition presented by the appellants to the Circuit Court of Pulaski county, Illinois, for a mandamus against the appellee asking that it be required to levy a tax for the payment of certain judgments described in the petition. The application was denied and petitioners prosecute this appeal.

The petition filed herein alleges that appellants recovered judgments against the appellee in the Circuit Court of Pulaski county to the total amount of $19,068.23. Said judgments were not recovered by the petitioners jointly but by them separately and for the amounts respectively due; one judgment for the amount of $398.87 was recovered at the April term, 1914, and one for the amount of $5,820.50 and another for $588.30 were recovered at the October term, 1914; another for $1,070 at the January term, 1915, and another for $861.95, and another for $2,469.65, and another for $169.67, and another for $238, and another for $595.93 were recovered at the April term, 1915, of said court, and there was another for the amount of $2,262.60, another for $2,304.23, another for $2,288.53 were recovered at the October term, 1915, of said court, and said petition sets forth in detail the names of the parties respectively in behalf of whom the several judgments were rendered. The petition further alleges that the Board of County Commissioners of Pulaski County held regular sessions of court in September, 1915, and that they met on September 28th and at that time the petitioners by their attorneys appeared before said board and demanded that said board should include among the purposes for which taxes should be raised a sum sufficient to pay said judgments, or portions thereof. That the said board adjourned until November 16, 1915, but refused to levy any tax for the payment of the said judgments, or any of them, or any part thereof. The petition then sets forth a list of the appropriations made and tax levied

by said court, amounting to $19,970, and then alleges that the amounts levied were at the rate of sixty-eight cents on the $100 and would produce $18,111.41; and avers that if the full rate of seventy-five cents on the $100 had been levied it would have produced the sum of $19,975.83; that the board finally adjourned without making any levy for the payment of said judgments or any part thereof. The petition concludes with a prayer for a writ of mandamus to be directed to the said board of county commissioners commanding it forthwith to meet and include among the purposes for which the taxes levied by said board are to be raised the payment of said judgments and to provide for the payment of said judgments and the interest thereon in equal annual instalments, not exceeding ten in number, and to include one of such instalments from the taxes to be raised for county purposes in the current year, and one each year thereafter, not exceeding ten, until all of said judgments are fully paid. Appellee filed an answer herein admitting that judgments were rendered against it in favor of the appellants respectively, as in said petition set forth, and then avers that county warrants were issued to all of said petitioners for their respective claims, and deny that any provision had been made for the payment of said judgments; also denying that there was no money in the treasury with which to pay said judgments; and deny that there was any demand made upon the county board to levy a tax for the payment of said judgments. Then avers th· the appropriations as made and set out are wholly inadequate to pay the running expenses of the county, and avers that it has been unable to pay the expenses of the county and that such expenses will not decrease but will increase; that it will be necessary hereafter to levy the full seventy-five cents on the $100 valuation for such expenses, and that if it is compelled by the order of this court to pay the full amount of said

judgments that it would leave the County of Pulaski without any money with which to run the courts and pay the salaries of the officers and other expenses. The answer also avers that in the appropriation made the county board only appropriated $600 for the State's Attorney salary when the actual amount of the State's Attorney salary is $1,600, and that the board neglected to provide a fund to pay the pensions of the blind, as provided by statute; and then avers that there were many other items omitted from said appropriation and that if all of the necessary items had been included it would have exceeded seventy-five cents on the $100.

It appears from the evidence in this case that after the judgments were rendered and at the September session of the court, the attorneys for appellants appeared before the board and requested that a levy be made to pay the said judgments, and while said court was in session assurances were given to the said attorneys that the judgments would be taken care of by the board. The board met on September 28, 1915, but adjourned to November 16, 1915. In the meantime the board consulted with an attorney with reference to the levying of this tax and was advised by the attorney that it was necessary for them to take some steps towards paying the judgments and that they had a right, if they desired so to do, to make payment of said judgments in ten equal payments and to make a levy each year for one-tenth part thereof. It also appears that the county was considerable in debt and that for the taxes levied in 1915 to be collected in 1916 the board was issuing warrants for debts that had been contracted and were due prior to that time, and were making efforts to make payment of certain claims that had been allowed without in fact making appropriation or specifying such in the levy. There is no definite testimony as to what the actual expenses of running

the county would amount to. One of the members of the board testified in general terms that the expenses would amount to more than seventy-five cents on the $100 but does not state with any definiteness or certainty what such expenses would consist of. It also appears that the board levied a tax of sixty-eight cents on the $100 and then adjourned without making any levy to pay the said judgments, or any part thereof, and it also appears in the record: "On the day the amended levy was made the board said they would not consider anything of the kind at all, if the judgment creditors wanted money they could go ahead and get it by law."

It will be observed that the answer in this case was very general, and if taken as true would not be sufficient to warrant the board in refusing to comply with the plain requirement of the law. If they were seeking to justify their conduct upon the ground it would require all of the revenue that could be raised by taxation to pay the ordinary and current expenses of the county, then they should have shown definitely that such would be a necessity and it should have appeared from the testimony that they were not levying a tax for one purpose and using the money to pay other indebtedness that had no greater right to be paid than the judgments in the petition mentioned. They should have itemized the expenses of the county so the court could have seen that they were acting in perfect good faith towards these creditors. *City of Chicago v. People,* 215 Ill. 235.

It appears from the evidence that one of the items levied was for $2,000: "For expense of aid in the construction of State aid roads," when there is nothing shown either by the evidence or the answer that any steps had been taken whereby it became necessary or proper to make such an appropriation; besides, the commissioner, Hosler, who testified in the case said:

"The State aid road would be in the neighborhood of $1,000 or $2,000;" and again he says that the State's Attorney fund is $1,600 and they made a levy of $600, but the evidence shows that the State's Attorney office for the last two years has been more than paying the salary of the State's Attorney; and he also states in his testimony concerning the sheriff's expense fund of $500, but admits that this is paid out of the fees of the sheriff's office, and his whole testimony shows an uncertain and indefiniteness that cannot be taken in the courts as a reason why they should not make a levy to pay off these judgments. The appropriation as made amounted to $17,970, and it is conceded by counsel for appellee that if a levy of seventy-five cents on the $100 had been made, it would have raised a fund of $19,975.83, but the levy amounted, as he says, to $18,111.41, and if you would deduct from this the $1,000 or $2,000 State aid fund, that the commissioner is uncertain about as to the amount required, and the $600 appropriated for the State's Attorney salary, together with the amounts appropriated where the fees were earned by the sheriff to cover expenses, it would more than pay a one-tenth of these judgments and the interest. The judgments totaled $19,068.26, to which would have to be added about $500 or $600 interest, and the one-tenth part of this would be less than the extra amount that could have been raised by the board, had it so desired. It is the duty of the board to show that it was actuated by an honest purpose to pay its legal obligations, and the statute of 1905 was enacted to enable the board to take care of such claims as had been reduced to judgments. *Board of Supervisors v. People,* 226 Ill. 579. Prior to the passage of the statute of 1905 it was much more difficult for judgment creditors to obtain a levy for the payment of their claims than it has been since the statute of 1905 was enacted. The statute that existed prior to 1905 pro-

vided: "Execution shall not, in any case, issue against the lands or other property of the county; but when judgment is rendered against a county, the county board shall direct an order to be drawn on the county treasurer for the amount of the judgment and costs, which order shall be paid as other county debts." In 1905 there was an amendment to this statute which provided: (a) "Whenever the county board in any county shall in any year determine the amount of all taxes to be raised for county purposes, such board shall include among the purposes for which such taxes are to be raised the payment of any outstanding judgment or judgments against such county for the payment of which no other provisions have been made. (b) The county board may provide for the payment of any such judgment or judgments and the interest thereon in equal annual installments, not exceeding, however, ten (10) in number, and may include one of such installments in the amount of taxes to be raised for county purposes each year, but the aggregate amount of all taxes to be raised for county purposes shall not in any year exceed the rate of seventy-five (75) cents on the one hundred dollars ($100) valuation of property unless authorized by a vote of the People of the county." Hurd's Rev. St. ch. 34, sec. 34 (J. & A. ¶ 2781).

While it is true as contended by counsel for appellee that the issuing of the writ of mandamus is not a writ of right but can only be issued in the discretion of the court, yet this is and must be a judicial discretion exercised when the interests of the parties involved require it, and we are of the opinion that this statute is mandatory and requires the board, when it comes to the question of determining the amount of taxes to be raised for county purposes, to include judgments that have been obtained against the county. "The amendment of section 34 in 1905 was unquestionably

intended to impose a positive duty upon the board of supervisors to include among the purposes for which taxes are to be raised the payment of any outstanding judgments against the county for the payment of which no other provisions have been made. Such is its plain and unequivocal language.'' *Board of Supervisors v. People, supra.*

It is argued by counsel for appellee that if it be required to levy the taxes to pay these judgments that it would then be deprived of any funds with which to pay the current expenses of the county, and in its answer it says that if it were required to pay these judgments that the effect would be to deprive them of any funds for current expenses. It is not sought by this petition to require the county to pay the judgments all at one time, but the petition is presented in such a manner as to give them the right to divide this up into ten equal payments. The testimony of the county clerk shows that out of the levy made in 1915, and from the taxes to be collected in 1916, that something like $12,000 in warrants had been drawn against this tax for debts that were due prior to its levy but none of them for the judgments, and the board has no right to pursue a course in the transaction of its business that will permit the payment of one debt and neglect the payment of another. A tax levying power cannot make provision for the payment of one debt or one class of claims and refuse to make any provision whatever for the payment of others, even those reduced to judgment. *Board of Supervisors v. People, supra.*

It is also contended by counsel for appellee that there was no demand made upon the board of commissioners to make this levy. We think the evidence fairly shows that a demand was made. It is testified to by two attorneys who appeared before the board, and also by one of the members of the board, that a request was made, and a promise upon the part of the

board to take care of the judgments but it was not done. It is clear that the existence of the judgments was brought to the attention of the board at its September meeting, and if nothing else was done then it was the plain duty of the board to proceed to make a levy for the payment of such judgments, even without any demand. The statute required it and they should have performed their duty under this statute. *City of Cairo v. Campbell*, 116 Ill. 309.

It is further insisted that if this levy is required to be made that the county will thereby be deprived of revenue sufficient to pay its current expenses. We do not believe that that question arises in this case, or that it is necessary to determine whether or not that might be the effect, for under the evidence in this case we are of the opinion that if all of the creditors were required to participate alike in the funds that the board was authorized to levy, that all could be properly taken care of and the expenses of the county paid. We are therefore of the opinion that it was not necessary for a determination of the rights of the parties herein to hold the proposition of law submitted.

It appears to us from the reading of this record that the board of commissioners were not disposed to treat these judgment creditors the same as they were treating other creditors and were unjustly discriminating against them in the levying of the tax, and that under the law they had no right to undertake to prefer one creditor over another, and the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*